UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

WESTERN SURETY COMPANY,

          Plaintiff,

  v.

LEO CONSTRUCTION, LLC, DAVID B.
GREENFIELD, SHARON M. GREENFIELD,
ROBERT S. CARLSON, AND MARION T.
CARLSON,

          Defendants.

3:12 - CV - 1190 (CSH)

**RULING ON PLAINTIFF'S MOTION TO AMEND COMPLAINT AND
THE CARLSON DEFENDANTS' MOTION TO OPEN DEFAULT**

**HAIGHT, Senior District Judge:**

I.     **BACKGROUND**

Plaintiff Western Surety Company ("plaintiff" or "Western") brings this indemnity action against Leo Construction, LLC ("Leo"), a contractor and limited liability company, and four individual defendants, David B. Greenfield, Sharon M. Greenfield, Robert S. Carlson, and Marion T. Carlson, requesting recovery for obligations Western allegedly incurred pursuant to "Performance and Labor and Material Payment Bonds" (the "Bonds") it issued to Leo on November 29, 2009 and December 21, 2009. Doc. #1, ¶¶10-11. Western issued the Bonds to enable Leo to perform construction under contracts with the City of Bridgeport and the Housing Authority of the City of New Haven, respectively. *Id.* As a condition of Western's issuance of said Bonds, Leo "executed a General Agreement of Indemnity ("GAI") wherein Leo agreed to indemnify Western for any loss, cost or expense incurred by virtue of having written the Bonds." *Id.*, ¶12. Similarly, the individual

1

defendants executed the GAI, individually agreeing to indemnify Western from any such loss, cost or expense arising under the Bonds.  *Id.*, ¶13.

Western alleges that  "[i]n connection with the Bonds, claims and demands have been filed against Western," payment of which, combined with "costs for consultants and attorneys," total in excess of $251,799.78. *Id.*, ¶14.  Western has made repeated demands for indemnity under the GAI from defendants; but defendants have failed and refused "to make payment or deposit collateral security with Western sufficient to cover the indemnity obligations of the defendants in connection with the Bonds."  *Id.*, ¶16.   Consequently, Western prays for monetary damages, interest, costs, attorney's fees, and "[s]uch other further legal or equitable relief as the court deems appropriate." *Id.*, p. 5.

Upon review of the Complaint, the Court noted that plaintiff had failed to plead sufficient facts to support its contention that this Court has subject matter jurisdiction based on diversity of citizenship.[1]  Specifically, the Court noted that plaintiff had failed to provide necessary facts for the Court to make  a finding of  citizenship as to  each of the parties.

Because it is incumbent upon a federal court to determine with certainty whether it has subject matter jurisdiction over a case pending before it, *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir.2006), and then to dismiss the action if such jurisdiction is lacking, Fed. R. Civ. P. 12(h)(3), on August 29, 2012, the Court directed  all parties to this action to file and serve before September 26, 2012, affidavits establishing their citizenship for federal diversity purposes.  Doc. #6.

On September 14, 2012, Western complied with the Court's Order, filing an affidavit to

---

[1]   *See*  28 U.S.C. § 1332(a)(1)  ("The district courts shall  have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States").

establish its citizenship in South Dakota, averring that it is a South Dakota corporation with its principal place of business located in Sioux Falls, South Dakota.   Doc. #12 ("Affidavit of Citizenship" of Western's "authorized representative" Cathleen M. Jareczek), ¶¶2-3.  *See also* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.").

As of November 8, 2012, none of the defendants had complied with the Court's Order to file affidavits of citizenship.   Moreover, all defendants had failed to appear or plead in the action. Because more than twenty-one days had elapsed since the date of service of the summons and complaint upon each defendant herein, August 24, 2012,  plaintiff moved for entry of default under Federal Rule of Civil Procedure 55(a).[2]   Doc. #13.   The  Clerk granted the motion as to all defendants on October 10, 2012.[3]  Doc. #14.

On November 5, 2012, plaintiff moved for default judgment against all defendants pursuant to Federal Rule of Civil Procedure 55(b).   Doc. #15.   In so moving, Western sought a sum certain "in the amount of $254,731.88, including the costs of filing fee and service," and declared that "none of the defendants are minors or incompetent persons." *Id.*, p. 1-2. In support of the motion, Western filed  affidavits of its authorized representative, Cathleen M. Jareczek, and counsel, R. Bradley

---

[2]  The  case docket indicates  that  "a summons was issued, and  the complaint was served on each of the defendants as shown on the Marshal's returns of service ([Doc. Nos.] 7, 8, 9, 10 and 11), service having been made on August 24, 2012." Doc. #13, p. 2.  In general, under Federal Rule of Civil Procedure 12(a)(1)(A)(i), "[a] defendant must serve an answer:  (i) within 21 days after being served with the summons and complaint."

[3]  Under Rule 55(a), the Clerk must enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).

Wolfe.  Doc. #15-1 & #15-2.  The Court deduced that  plaintiff sought entry of default judgment by the Clerk.  *See* Fed. R. Civ. P. 55(b)(1).

Despite the circumstances of default, the Court was unable to direct the Clerk to enter judgment for the plaintiff due to the continuing ambiguity regarding the Court's subject matter jurisdiction.  Absent affidavits from the defendants and without sufficient facts pled in the Complaint, the Court remained unable to confirm its subject matter jurisdiction.  Consequently, any default judgment entered could later be deemed void or subject to being vacated.  The Court thus denied plaintiff's motion for default judgment without prejudice and ordered plaintiff to, on or before December 31, 2012,  amend its Complaint and/or file affidavit(s) to make a prima facie showing of the defaulting defendants' citizenship.[4]  Absent plaintiff's timely cure of the jurisdictional defects, the Court would dismiss the action without prejudice.

On November 9, 2012, Attorney James G. Verrillo entered an appearance on behalf of individual defendants Robert S. Carlson and Marion T. Carlson (herein collectively the "Carlson defendants").  On November 30, 2012, the Carlson defendants filed an affidavit to establish their citizenship in the state of Connecticut for purposes of this action.  Doc. #18.  Contemporaneously with the affidavit, the Carlsons filed the pending "Motion to Open Default."  Doc. #19.

On December 13, 2012, Western filed its "Motion to Amend Complaint" addressed herein. In the proposed Amended Complaint, Western has pled facts to establish its own citizenship, as well as that of the defendants.  Plaintiff supports its proposed amendment with the previously filed

---

[4] As  the  Court explained, "[t]he burden of demonstrating subject-matter jurisdiction lies with the party asserting it" – in this case, plaintiff Western.  *MLC Fishing, Inc. v. Velez*,  667 F.3d 140, 141 (2d Cir. 2011) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 85 (2d Cir.2008)). *See also Sharkey v. Quarantillo*, 541 F.3d 75, 82-83 (2d Cir. 2008) ("The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists.")(internal quotations and citation omitted).

affidavit of its representative, Cathleen Jareczek (Doc. #12); the affidavit of the Carlson defendants

regarding their citizenship (Doc. #18); and facts revealed upon investigation into the citizenship of

the limited liability company, Leo, and individual defendants David B. Greenfield and Sharon M.

Greenfield (collectively, the "Greenfield defendants").

The Court shall first address Western's motion to amend the Complaint to determine whether

the proposed amendments are sufficient to establish diversity of citizenship between plaintiff and

all defendants.  In the event that subject matter jurisdiction remains inadequately pled or otherwise

lacking, the Court must dismiss the action.  If the Court grants leave to Western to file the Amended

Complaint, finding that there is a sufficiently pled factual basis for subject matter jurisdiction, the

Court will then turn to the Carlson defendants' motion to open the default entered against them.

## II.   DISCUSSION

### A.   Western's Motion to Amend the Complaint

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with

the opposing party's written consent or the court's leave" and "[t]he court should freely give leave

when justice so requires."[5] Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared

---

[5] A party may also  "amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after
service of a responsive pleading or 21 days after service of a motion under Rule
12(b), (e), or (f), whichever is earlier."

Fed. R. Civ. P. 15(a)(1)(A)-(B).  Neither situation applies here and thus plaintiff may only amend
with written consent of the opposing parties or the court's leave.  *Id.* 15(a)(2).  It is not surprising
that under the present circumstances, where all defendants are currently in default, there has been
no written consent by the defendants.

reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.– the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).  *See also Milanese v. Rust-Oleum Corp.*, 244 F.3d 104,110 (2d Cir. 2001) ("Leave to file an amended complaint 'shall be freely given when justice so requires,' Fed.R.Civ.P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.").  Moreover, it is a "rare" event when "such leave should be denied." *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991).

In the case at bar, in compliance with this Court's Ruling of November 27, 2012 (Doc. #17), plaintiff seeks leave to amend its complaint  to "allege the proper citizenship of the parties."  Doc. #20, p. 1.   First, in its proposed Amended Complaint, plaintiff incorporates the facts necessary to establish its own citizenship, namely that it "is incorporated as a South Dakota corporation with a principal place of business at 101 South Reid Street, Sioux Falls, South Dakota 57103."  Doc. #20 ("Proposed Amended Complaint), p. 4 (¶1).   Plaintiff supports these facts with the affidavit of its representative. Doc. #12 (Jareczek affidavit), p. 4 (¶¶2-3).

Next, plaintiff attempts to set forth the citizenship of defendant Leo, "a Connecticut limited liability company with its principal place of business at 470 Beechwood Avenue in Bridgeport, Connecticut."  Doc. #20, p. 5 (¶2).  As described in this Court's previous Order (Doc. #6, p. 4), "[t]he citizenship for diversity purposes of a limited liability company  . . . is *the citizenship of each of its members*."  *Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 267 (7th Cir. 2006)(emphasis added), *cert. denied,* 549 U.S. 1047 (2006).   In *Handelsman v. Bedford Village Associates Ltd.*

6

*Partnership*, 213 F.3d 48 (2d Cir.2000),  the  Second Circuit articulated the rule that "for purposes

of diversity jurisdiction, a limited liability company has the citizenship of its membership."

Therefore, "citizenship of a limited liability company is not the state in which it is organized or has

its principal place of business, but rather, each of the states in which it has members." *Lewis v. Allied*

*Bronze LLC*, No. 07 Civ. 1621(BMC), 2007 WL 1299251, at *1-2 (E.D.N.Y. May 2, 2007) (citing

*Handelsman*, 213 F.3d at 51-52).[6]

    In the proposed Amended Complaint, plaintiff specifies that the members of the Leo limited

liability company are: "David B. Greenfield and SRK, LLC," which "is registered as a Connecticut

Domestic Limited Liability Company located at 68 Soundview Drive, Easton, Connecticut," and is

in turn comprised of two members: "defendants Robert S. Carlson and Marion T. Carlson." Doc.

#20, p. 5 (¶2).   According to Western, individual defendant David B. Greenfield is "a citizen of

Stratford, Connecticut."[7] *Id.* (¶3). Moreover, the Carlson defendants, the two named members of

---

    [6]  *See also  City  of New York v. Mickalis Pawn  Shop, LLC*,  645 F.3d 114, 127 n. 13 (2d
Cir. 2011) (citing *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir.
2000), as the appropriate "test for determining the citizenship of a limited-liability company").

    [7] Plaintiff  represents that it  has based  its amendments with respect  to the citizenship of
Leo and its members on "an examination of the records of the Secretary of the State of Connecticut,"
which "revealed that the members of the LLC are *the Greenfields* and another LLC whose members
are the Carlson defendants." Doc.#20 (Motion to Amend Complaint), p. 2 (emphasis added).  There
is thus disparity between the proposed Amended Complaint and plaintiff's motion to amend as to
whether Sharon M. Greenfield is a member of Leo Construction, LLC – *i.e.*,  the proposed Amended
Complaint does not include Sharon M. Greenfield as a member of Leo but the motion in support of
amendment states that the members of Leo include  "the Greenfields" (plural), Doc. #20, p. 2.  If it
be the fact, plaintiff should amend its complaint to include Sharon M. Greenfield as a member of
Leo.  Nonetheless, whether or not Sharon M. Greenfield is a member of Leo, diversity with Western
will remain intact because, according to Western's amended complaint, Sharon M. Greenfield, is "a
citizen of Stratford, Connecticut."  Doc. #20, p. 5 (¶4).

    Also of note, in its motion to amend, plaintiff bases its proposed amendment "as to the
Greenfield [d]efendants . . . upon an investigation that revealed their ownership of real and personal

SRK, LLC who are also individual defendants, are both citizens of Easton, Connecticut. *Id.* (¶¶5-6). *See also* Doc. #18, p. 2 (¶2) (affidavit of Robert S. Carlson attesting that both Marion T. Carlson and [Robert S. Carlson] are citizen[s] of the State of Connecticut [who] reside at 68 Soundview Drive, Easton, CT 06612").[8]  Based on the allegations contained in the proposed Amended Complaint, the Court concludes that all members of the Leo limited liability company are citizens of Connecticut, and hence Leo is a citizen of Connecticut.

Furthermore, plaintiff has alleged that all individual defendants, both the Greenfields and Carlsons, are "citizens" of Stratford and Easton, Connecticut respectively.  Doc. #20, p.5 (¶¶3-6). According to plaintiff, all four individual defendants are thus citizens of Connecticut.[9]

---

property in Connecticut and their registration as electors in this State [of Connecticut] under C.G.S. [Connecticut General Statute] § 9-13."  Doc. #20, p. 2.  That provision, captioned "Electors: Qualifications and Admission, Blind persons," states that "[n]o applicant, otherwise qualified to be an elector in this state, shall be ineligible by reason of blindness or defective sight."  Unless the Greenfields are both blind, the Court suggests that the provision plaintiff intended to cite is Connecticut General Statutes §9-12, which sets forth the general provisions regarding "[w]ho may be admitted" as an elector.  *See* Conn. Gen. Stat. §9-12 (a) ("Each citizen of the United States who has attained the age of eighteen years, and who is a bona fide resident of the town to which the citizen applies for admission as an elector shall, on approval by the registrars of voters or town clerk of the town of residence of such citizen, as prescribed by law, be an elector . . . .").

[8]  The Court notes a lack of precision in the language employed by the Carlson defendants, asserting that they are "citizens" of Connecticut and yet providing the location of their *residence*, as opposed to their *domicile*. It is "well-established that allegations of residency alone cannot establish citizenship," *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 102-03 (2d Cir. 1997), because an individual's citizenship for diversity purposes is determined by his or her *domicile*, not residence, *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).  Because, however, the Carlson defendants have also attested that they are "citizens" of Connecticut, listing their sole place of residence as Easton, Connecticut, the Court will accept their representation regarding citizenship, deeming Easton as the place of their "*domicile*."

[9]  The Court has previously reminded plaintiff that *domicile* is the key determining fact with respect to an individual's citizenship. *See* Doc. #17, p. 10-11; *see also* n.8, *supra*.  If plaintiff intends to allege that the individual defendants are citizens of Connecticut, plaintiff should more correctly state that each is *domiciled* in Connecticut.

Because plaintiff is a citizen of South Dakota and all named defendants are allegedly citizens of Connecticut, and the damages sought exceed the jurisdictional minimum of $75,000, this Court finds that, pursuant to the facts alleged in the proposed Amended Complaint, there is "diversity of citizenship" subject matter jurisdiction, 28 U.S.C. § 1332(a)(1).[10]

In sum, the Court finds that Western's proposed amendment of the Complaint serves the interests of justice by clarifying and demonstrating this Court's subject matter jurisdiction over the case.  Moreover, defendants have filed no objection to plaintiff's motion for leave to amend and the twenty-one-day period to make such an objection has expired.  *See* D. Conn. L. Civ. R. 7(a)(1) ("[u]nless otherwise ordered by the Court, all memoranda in opposition to any motion shall be filed within twenty-one (21) days of the filing of the motion").[11]  Plaintiff filed the motion on December 13, 2012, so that defendants had until January 3, 2013 to object and failed to do so.   In the interests of justice, and absent objection, the Court will grant  plaintiff's "Motion to  Amend Complaint." (Doc. #20).

Plaintiff shall correct any inaccuracies (*e.g.*, possible failure to include Sharon M. Greenfield as a  member of Leo) or misstatements of language (*e.g*., residence versus domicile) referenced in

---

[10]  Because Western  seeks damages in excess of $251,799.78, those damages well exceed the requisite jurisdictional amount of $75,000 under U.S.C. § 1332(a)(1).  Doc. #20 (Proposed Amended Complaint), p. 7 (¶14).

[11]  The  Court  reminds  plaintiff that  a  motion  to  amend a pleading pursuant to Fed. R. Civ. P. 15(a) must "include a statement of the moving counsel that: (1) he or she has inquired of opposing counsel and there is agreement or objection to the motion; or (2) despite diligent effort, he or she cannot ascertain opposing counsel's position."  D. Conn. L. Civ. R.  7(f).  Plaintiff herein made no such statement in its motion to amend.   However, as of the date plaintiff filed the motion, default had been entered against all defendants for failure to plead or otherwise defend.   Under such circumstances, where defendants had no counsel of record, although the Court cautions plaintiff to include the requisite statement regarding inquiry into counsel's position as to any future motion to amend, the Court will exercise its discretion to consider the pending motion at this time.

this Ruling (*see* n. 7 & 9) and then e-file its amended complaint on or before **January 31, 2013**.  All defendants in the action as of the date the amended complaint is filed shall e-file their answers or responses "within 14 days after service of the amended pleading" or once again risk default.   Fed. R. Civ. P. 15(a)(3).

### B.   Carlson Defendants' Motion to Open Default

Pursuant to Federal Rule of Civil Procedure 55(c), the Carlson defendants move the Court to set aside the default entered against them.  Doc. #19.  "A motion under Rule 55(c) to set aside an entry of default is addressed to the sound discretion of the district judge."  *State Farm Mut. Auto. Ins. Co. v. Cohan*, 409 F. App'x  453, 455 (2d Cir. 2011)(quoting  *Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir.1984)).  "Because the trial judge is the person most familiar with the circumstances of the case and is in the best position to evaluate the good faith and credibility of the parties, a reviewing court will defer to his decision unless it is clearly wrong." *State Farm Mut. Auto. Ins. Co.,* 409 F. App'x at 455 (citations omitted).

Under Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause."  Although the rule does not define "good cause," the Second Circuit has " advised district courts to consider three factors in deciding a Rule 55(c) motion: (1) whether the default was willful; (2) whether the moving party has presented a meritorious defense; and (3) whether setting aside the default would prejudice the party for whom default was awarded."  *State Farm Mut. Auto. Ins. Co.,* 409 F. App'x at 455  (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir.1993)). *See also Pecarsky v. Galaxiworld.com Ltd.,* 249 F.3d 167, 171 (2d Cir.2001) ("When deciding whether to relieve a party from default or default judgment, we consider the willfulness of the

10

default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted.").

"Defaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981)(*per curiam*)(citing, *inter alia*, *Klapprott v. United States*, 335 U.S. 601, [615 ] (1949)). "While courts are entitled to enforce compliance with the time limits of the Rules by various means," default is viewed as an "extreme sanction," one to be treated as "a weapon of last, rather than first, resort." *Meehan,* 652 F.2d at 277(citations omitted).  *See also Enron Oil Corp.*, 10 F3d at 96 ("because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party").

As part of its analysis, when considering a motion to set aside a default, the Court may consider equitable factors such as "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp.*, 10 F.3d at 96.  With respect to the result, "good cause" and the criteria for setting aside a default "should be construed generously," as a "reflection of [the Second Circuit's] oft-stated preference for resolving disputes on the merits."  *Id.* at 95 -96 (citing, *inter alia*,  *Meehan*, 652 F.2d at 277).

"A motion to vacate a default is subject to a less rigorous standard than applies to a Rule 60(b) motion to vacate a default judgment."  *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.,* 92 F.3d 57, 59 (2d Cir. 1996) (citing *Meehan*, 652 F.2d at 276 (which states that "standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect'

11

standard for setting aside a default judgment by motion pursuant to Rule 60(b)")).[12]  *See also State*

*Farm Mut. Auto. Ins. Co.*, 409 F. App'x at 456  (Second Circuit "analyzed [defendants'] claims

under Rule 55(c)'s *more forgiving standard* for setting aside an administrative default")(emphasis

added); *New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005) (Under Rule 55(c), "a default may be

vacated for 'good cause shown,' a less rigorous standard than applies under Rule 60(b).").  When

a district court has erroneously applied the more vigorous standard of Rule 60(b) to consider vacating

a default, versus a default *judgment*, the Second Circuit has held that such an error "requires

reversal." *Meehan*, 652 F.2d at 276.

Applying the three relevant factors supplied by the Second Circuit with respect to "good

---

[12]  In determining whether to set aside a default *judgment* pursuant to Federal Rule of Civil Procedure 60(b)(1), courts consider the following factors:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1)-(6).  *See also American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.,* 92 F.3d 57, 59 (2d Cir. 1996) (quoting *Davis v. Musler,* 713 F.2d 907, 915 (2d Cir. 1983); *Gucci Am. v. Gold Ctr. Jewelry,* 158 F.3d 631, 635 (2d. Cir. 1998).

cause" in considering a Rule 55(c) motion, the Court first examines whether the Carlson's default was "willful."   Regarding "willfulness," in the similar, albeit more rigorous, context of default judgment, the Second Circuit has "implied that it will look for bad faith, or at least something more than mere negligence." *American Alliance Ins. Co., Ltd.*, 92 F.3d at 60.   "Although courts have an interest in expediting litigation, abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct." *Id.* at 61

In the case in suit, the evidence presented indicates no  bad faith, egregious behavior or deliberate default by  the Carlsons.   The Carlsons appeared in this action on November 9, 2012  – almost two months after the deadline expired  to answer or respond to the Complaint, September 14, 2012, and approximately one month and two weeks after the deadline expired to comply with this Court's Order to file affidavits of citizenship, September 26, 2012.  Doc. #16.   In their motion to set aside the entry of default against them, the Carlsons explained that their failure to meet the case deadlines resulted from their usual  practice of relying on Leo's  corporate counsel to defend the action.  Doc. #19.   Robert S. Carlson stated that he "received a copy of the complaint on or about August 23, 2012."  Doc. #19-2, ¶3.   He thereafter "turned over [the complaint] to the corporate counsel of defendant company, Leo Construction[,] LLC, in order to appear and defend."  *Id.*, ¶4. *See also* Doc. #19, ¶3 (Leo's "[c]orporate counsel has generally appeared for the individual members of the company, Leo Construction, LLC.").   "However," the Carlsons elaborated,  "[a]t the time of the turnover of the Complaint, and soon thereafter, a dispute [arose] between defendants, Robert [S.] Carlson and David Greenfield." Doc. #19-1, p. 1.  *See also*  Doc. #19-2, ¶5 ("Corporate counsel became aware that certain disputes [had] arisen between [Robert S. Carlson] and . . . defendant, David B. Greenfield").   As a result of the dispute, "regular corporate counsel . . . indicated that he

13

would not appear for any parties."  Doc. #19-1, p. 1.  *See also* Doc. #19-2, ¶ 6 ("While generally corporate counsel would appear on behalf of these individuals in all litigation, he would not in this particular case because of the disputes that ha[d] arisen."); Doc. #19, ¶3 ("[o]ut of an abundan[ce] of caution, corporate counsel has refused to appear on behalf of anyone").

The Carlsons assert that said "[c]orporate counsel did not notify [them] that he would not appear until the first week in November 2012" – after the Clerk had granted entry of default for failure to appear.  Doc. #19-2, ¶7.  "Immediately thereafter, [they] retained counsel, James G. Verrillo of Zeldes, Needle & Cooper, P.C. to appear and defend on [their] behalf."  *Id*.  Attorney Verrillo "immediately filed an appearance on their behalf."  Doc. #19, ¶4.

Applying the "good cause" standard of Rule  55(c), the Court finds  no deliberate intent to default and accordingly no "willfulness" by the Carlsons.  First, the Carlsons did not wilfully delay appearance in the action.  Rather, they relied upon Leo's corporate counsel and failed to monitor the progress of the case to see if he had  appeared on their behalf.   As laypersons and members of Leo, they relied on in-house counsel's usual practice of representing members of the Leo limited liability company.  Upon learning of the default, the Carlsons swiftly retained their own counsel to appear on their behalf and to attempt to open the default.  Since that time, their attorney has "reached out" to Western's counsel and has "been in contact with him on a regular basis," holding ongoing "[d]iscussions to resolve all matters . . . at this time." Doc. #19-1, p.3. Such efforts by the Carlsons indicate to the Court an intention, albeit  belatedly exercised,  to comply with its deadlines.  In short, from the evidence presented by the Carlsons, the Court finds that their default was not willful.

Second, in considering the next relevant  factor of "meritorious defense," the Carlsons have argued that they have both meritorious defenses to this action and grounds for cross-claims against

14

fellow defendants.  With respect to "meritorious defenses," "[t]o satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *American Alliance Ins. Co., Ltd.*, 92 F.3d at 61.  *See also State Farm Mut. Auto. Ins. Co.,* 409 F. App'x at 456 ("[i]n order to make a sufficient showing of a meritorious defense in connection with a motion to set aside a default, the defendant need not establish his defense conclusively," but rather present facts that would constitute a defense).  "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir.1988)).

In the case in suit, the Carlsons claim that they "have meritorious defenses" they wish to assert in this action, "including accountings and cross-claims with respect to other defendants." Doc. #19, ¶5.  The Carlsons state that "they would like to review and inspect all of the payments allegedly made by the bonding company to ascertain if these were properly done."  Doc. #19-1, p. 3. Robert S. Carlson has averred that "[t]here are certain defenses in accounting that must be undertak[en] and provided to [him] and [he] believe[s] that until this information is received," he "might well have defenses of contribution with respect to [plaintiff's] outstanding claims."  Doc. #19-2, ¶8.

Although the Carlsons may be unable to substantiate their alleged  defenses prior to discovery,  they have expressed, through the sworn affidavit of Robert S. Carlson, a genuine belief that such defenses exist.  If, as the Carlsons contend, payments were not properly made on the Bonds at issue (*i.e.*, there were accounting problems in plaintiff's payment on the Bonds)  and/or the Carlsons have viable cross-claims against the other defendants in the action, such facts may limit or

diminish the indemnification amount, if any, that the Carlsons owe Western.[13]  A determination on the facts with respect to any such defense may be made by the trier of fact.  Furthermore, given the law's general preference for trial on the merits, if default against the Carlsons were to remain in effect,  it might constitute a "harsh" and potentially unjust  result with respect to any amount that the Carlsons owe Western.[14]  Hence, employing the "forgiving standard" applicable to review defaults, the Court finds the Carlsons' earnest, albeit less than fully persuasive, proposition that they possess a "meritorious defense" sufficient, especially where, as here,  the defendants have not defaulted willfully and plaintiff has presented no opposing argument to their motion.[15]

Third, "[t]he final factor that a court must consider in determining whether to set aside a default is the potential that doing so would result in prejudice to the non-defaulting party." *State*

---

[13]  Connecticut has recognized a surety's duty to act in "good faith" when making payments upon an indemnity bond. *See, e.g., Travelers Prop. & Cas. Ins. Co. v. Triton Marine Const. Corp.*, 473 F.Supp.2d 321, 330-31 (D.Conn. 2007) ("The implied covenant of good faith and fair dealing applies in the context of a surety indemnity agreement;" and the Connecticut Supreme Court has "concluded that a surety's failure to conduct a sufficient investigation into the validity of a claim upon a payment bond, when accompanied by other evidence that reflects improper motive, may be considered evidence of bad faith") (citing *PSE Consulting, Inc. v. Frank Mercede and Sons, Inc.*, 267 Conn. 279, 302, 310 (2004)).

[14]  According to Western,  "[u]nder the terms of  the GAI, each of the defendants is jointly and severally liable to Western for all of [the] losses [it has incurred on Western's behalf] including the costs and fees associated with bringing this action." Doc. #20, p. 7 (¶15); *see also* Doc. #1-2 ("General Agreement of Indemnity"), p. 1, para. 3 (in which indemnitors "jointly and severally agree" with Western).

[15]  The Carlson defendants filed their motion to set aside the default on November 30, 2012.  Doc. #19.  Pursuant to Local Rule of Civil Procedure 7(a)(1), Western had twenty-one days from that date, until December 21, 2012, to file a memorandum in opposition to the motion, but filed no such objection.  D. Conn. L. Civ. R. 7(a) ("all memoranda in opposition to any motion shall be filed within twenty-one (21) days of the filing of the motion").  Under Rule 7(a), "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion."  *Id.*

16

*Farm Mut. Auto Ins. Co.*, 409 F. App'x at 456.   As the Carlson defendants suggest, Western will suffer minimal prejudice if the Carlsons are allowed to participate in the action.   The action remains in its preliminary stages  – *i.e.*, the Complaint is about to be amended and  discovery has not proceeded in that the Carlsons are the first and only defendants to have appeared in the action. Moreover, the Carlsons assert that hereinafter they will cooperate swiftly "to reach the merits of the matter" in this case.[16]  Doc. #19-1, p. 3.   They have reported that their counsel has "reached out" to Western's counsel and has "been in contact with him on a regular basis," holding ongoing "[d]iscussions to resolve all matters . . . at this time." *Id.*

Finally, Western has made no argument that it will be prejudiced by having to prosecute this action against the Carlsons.   In fact, Western has made no objection to the Carlson defendants' motion to open the default against them; and the period to object has expired.[17]

In sum, the Carlsons assert that their lack of willfulness (*i.e.*, justifiable, albeit ineffective, reliance on corporate counsel), their need to assert meritorious defenses to the action, and the lack of prejudice to Western all  comprise  "good cause" to set aside entry of default pursuant to Federal Rule of Civil Procedure 55 (c).  Specifically, the Carlson defendants' failure to appear in this action resulted from their prior practice of relying on Leo's corporate counsel for representation.   Upon discovering that such reliance was misplaced, they retained Attorney Verrillo, who has appeared and

---

[16] To that end, should  the  parties  seek  assistance in resolving the case by engaging in settlement negotiations before a Magistrate Judge, they are advised to so inform Chambers by joint motion.

[17] *See* n. 15, *supra*.

participated in ongoing discussions to resolve this matter in an expeditious fashion.  The Carlsons maintain that they have meritorious defenses and possible cross claims to assert should the action proceed. Furthermore, the action remains in its preliminary stages so that setting aside the default against the Carlsons will result in minimal prejudice to plaintiff.  Western has filed no objection to the Carlsons' motion and thus has made no showing of any resulting prejudice should the default be set aside.

For all of the foregoing reasons, the Court finds "good cause" to set aside entry of default against the Carlson defendants.  Accordingly, their "Motion to Open Default" (Doc. #19) will be granted.  The Carlson defendants shall file their answer to the Amended Complaint within fourteen (14) days after the amended complaint is filed and served.  Fed. R. Civ. P. 15(a)(3).[18]

### C.      Defaulting Defendants Leo Construction, LLC and the Greenfield Defendants

Lastly, the fact that the Court will set aside the default against the Carlson defendants has no bearing on the default entered against defendants Leo and the Greenfields.  Those three defendants have also been defaulted with respect to the original Complaint but unlike the Carlsons have not moved to open the default.  Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc., v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992), *cert. denied*, 506 U.S. 1080 (1993).

---

[18]  Rule 15(a)(3) delimits the "Time to Respond" to an amended pleading, as follows:

Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or *within 14 days after service* of the amended pleading, whichever is later.

Fed. R. Civ. P. 15(a)(3) (emphasis added).

As a rule, "[i]t is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *International Controls Corp. v. Vesco*, 556 F.2d 665, 668-69 (2d Cir. 1977) (citing, *inter alia*, *Washer v. Bullitt County*, 110 U.S. 558, 562 (1884); *Miller v. American Export Lines, Inc.*, 313 F.2d 218 (2d Cir. 1963) (per curiam)).   Moreover, the Second Circuit has held that the point at which the amended complaint supersedes the original complaint is the time of service "where . . .  the amended complaint is required to be served under Rule 5(a)." *Vesco,* 556 F.2d at 669.   The original complaint is normally  superseded when the plaintiff serves the amended complaint, as opposed to when plaintiff files it. *Id.*

However, no service on a defaulting party is required under Federal Rule of Civil Procedure 5(a) if that  party has failed to appear and the amended complaint does not assert any new claims against it.   Specifically, Rule 5(a)(2), captioned, "If a Party Fails to Appear," provides:

> No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4.

As one district court observed, "the Second Circuit has found that there is nothing improper about holding one defendant in default of one complaint and other defendants liable on later complaints." *Finkel v. Hall-Mark Elec. Supplies Corp.*, No. 08–CV–0446 (RRM)(SMG), 2009 WL 3401747, at *3 (E.D.N.Y. Oct. 21, 2009) (citing  *Vesco*, 556 F.2d at 668 n. 3 ("It is immaterial that [the plaintiff] is proceeding against certain other defendants on the amended complaint, since they have been properly served with that complaint.")).   "Otherwise, a plaintiff might be unable to obtain judgment against a defendant who, although properly served with the original complaint, evades service of an amended complaint." *Finkel*, 2009 WL 3401747, at *3.   It thus follows that in

19

circumstances of default, "the court does not find it significant that two different complaints are operative against different defendants." *Id*. "There is no inconsistency in finding [one defendant] in default of the First Amended Complaint and the other Defendants in default of the Second Amended Complaint." *Id. See also Saint-Gobain Autover USA, Inc. v. Fuyao Glass Industry Group Co., Ltd.*, No. 05-71079, 2005 WL 3454402, at *1 (E.D. Mich. Dec. 16, 2005) ("Here, Plaintiffs' Amended Complaint did not assert any new claims, but rather filled in the holes in the Original Complaint in order to survive the motion to dismiss. Because Defendant's answer to the Original Complaint had not been received within twenty days of service, Defendant Fuyao China was in default, and Plaintiffs were not obligated to serve Defendant [who had failed to appear] with the Amended Complaint.").

Here, the Court observes that the proposed Amended Complaint asserts the same indemnity claim, employing the same language, that is set forth in the original Complaint and adds no new claims. Only the factual allegations regarding citizenship of the parties have been filled in  or fleshed out to satisfy this Court that it has subject matter jurisdiction. *Compare* Doc. #1, p. 1-2 ("The Parties") *with* Doc. #20, p. 4-5 ("The Parties").  Therefore, service of the amended complaint upon the defaulted defendants, Leo and the Greenfield defendants, is not required under Rule 5(a). *See* Fed. R. Civ. P. 5(a)(2).  *See, e.g.*, *Finkel,* 2010 WL 8445099, at *2 ("Because the amended complaint does not assert any new claims against [defaulting defendant] Genergy, service of the amended complaint pursuant to Rule 4 was not required.").  Leo and the Greenfield defendants thus remain in default as to the original Complaint and now that the Court is satisfied that it has "diversity of citizenship" subject matter jurisdiction, plaintiff may, if so advised,  renew its motion for default judgment as to these defendants.

20

III.   <u>CONCLUSION</u>

Plaintiff's "Motion to Amend Complaint" (Doc. #20) is GRANTED, absent objection and because justice so requires.  The proposed Amended Complaint is not the product of undue delay or bad faith and will neither result in undue prejudice to defendants nor be futile in effect.  Rather, that complaint will correct the jurisdictional defects of the prior Complaint, providing the Court with sufficient allegations to confirm its subject matter jurisdiction based on diversity of citizenship. Plaintiff shall correct any inaccuracies and/or misstatements of language contained in the proposed Amended Complaint, as described herein at n.7 and n.9, and e-file and serve the finished product on or before **January 31, 2013** on the relevant defendants, in compliance with Federal Rule of Civil Procedure 5(a).[19]

The Carlson defendants' "Motion to Open Default" (Doc. #19) is GRANTED, absent objection and  for "good cause."  The record shows that the Carlsons' understandable mistake, arising from the prior practice of relying upon defendant Leo's corporate counsel to represent them, led to their inadvertent as opposed to willful default. Their immediate retention of counsel upon learning of their error and prompt entry into the case thereafter evidence their intention to participate in the action in good faith. Given the Carlsons' contention that they believe they possess meritorious defenses and also cross-claims against their co-defendants, the Court finds that it would be in the interests of justice to allow disposition of this matter on the merits.  Prejudice to plaintiff will be minimal in that the case remains in its earliest stage.  Accordingly, pursuant to Rule 55(c) of the Federal Rules of Civil Procedure and the Second Circuit's preference for resolving disputes on the

---

[19]  *See* discussion in Part II.C., *supra*.

merits, "good cause" exists for this Court to set aside the default against the Carlson defendants, and I do so.

The Carlson defendants, having been restored as active parties to this action, shall e-file their answer or response to plaintiff's Amended Complaint within fourteen (14) days after that complaint is filed and served or risk re-entry of default.[20]

It is So Ordered.

Dated: New Haven, Connecticut
        January 11, 2013


                                            /s/Charles S. Haight, Jr.
                                            CHARLES S. HAIGHT, JR.
                                            SENIOR UNITED STATES DISTRICT JUDGE

---

[20] Consistent with Rule 15(a)(3) of the Federal Rules of Civil Procedure and in light of the anticipated filing of the Amended Complaint, the Court now grants the Carlson defendants fourteen days, as opposed to ten days, to reply to the Amended Complaint. *Cf.* Doc. #17, p. 12 (holding that the Carlson defendants "must file their answer or response to the Complaint within ten (10) days following entry of the [Court's] ruling," if any, setting aside the default against them.).